1  JEFFREY M. COHON, ESQ. (CSBN 131431), a member of
   HENRY NICHOLLS, ESQ. (CSBN 126129), an associate at
2  **COHON & POLLAK, LLP**
   1999 Avenue of the Stars, Suite 1100
3  Los Angeles, California 90067
   Tel: (310) 231-4470
4  Fax: (310) 231-4610
   jcohon@cohonpollak.com
5  hnicholls@cohonpollak.com

6  Attorneys for Plaintiffs
   BENNETT B. COHON and MARILYN COHON
7

8              UNITED STATES DISTRICT COURT

9           FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                    WESTERN DIVISION

11              **CV11   08114 RGK FMOx**

12  BENNETT   B.   COHON,   an   individual,)   CASE NO.
    MARILYN COHON, an individual,           )
13                                          )   **COMPLAINT FOR:**
                     Plaintiffs,            )   **(1)   BREACH   OF INSURANCE**
14                                          )          **CONTRACT**
         vs.                                )   **(2)   DECLARATORY RELIEF**
15                                          )   **(3)   BREACH   OF   DUTY   OF   GOOD**
    CHICAGO TITLE INSURANCE COMPANY a)             **FAITH AND FAIR DEALING**
16  Nebraska corporation,                   )
                                            )   **REQUEST FOR JURY TRIAL**
17                   Defendant.             )
                                            )
18  _____     )

19

20       Plaintiffs BENNETT B. COHON and MARILYN COHON allege:

21                  **PARTIES TO THE ACTION**

22       1.      BENNETT B. COHON is, and at all times herein mentioned was, a citizen of the State

23  of California and at all times herein mentioned was a resident of the State of California.

24       2.      MARILYN COHON is, and at all times herein mentioned was, a citizen of the State of

25  California and at all times herein mentioned was a resident of the State of California.

26       3.      At all times relevant herein, BENNETT B. COHON and MARILYN COHON were

27  insureds under an ALTA Residential Title Insurance Policy that is the subject of this Complaint, Policy

28  No. 05-0059-97-010503, with effective date March 13, 1992.  These insureds shall hereinafter be

                                 1

1   collectively referred to as "THE COHON INSUREDS."  This policy shall hereinafter be referred to as

2   the "POLICY."

3       4.      THE COHON INSUREDS are informed and believe and thereon allege that Defendant

4   CHICAGO TITLE INSURANCE COMPANY ("CHICAGO TITLE") is, and all times herein mentioned

5   was, a Nebraska Corporation licensed to sell insurance in the State of California.

6                                   **BASIS FOR JURISDICTION**

7       5.      Federal jurisdiction in this matter arises under 28 U.S.C. §1332 in that the matter in

8   controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states

9   or nations.

10      6.      Venue in this matter in the Central District of California is appropriate under 28 U.S.C.

11  §1391(a)(2) because the named defendant is subject to personal jurisdiction in this action within the

12  Central District of California and because a substantial part of the events, omissions or injuries

13  complained of occurred within this jurisdiction.

14                                  **THE INSURANCE POLICY**

15      7.      CHICAGO TITLE, acting by and through its duly authorized agents and representatives,

16  issued and underwrote the above-referenced POLICY to THE COHON INSUREDS as named insureds.

17  This POLICY was in full force and effect at all times referenced herein.

18      8.      The POLICY was negotiated, issued and delivered in the State of California.

19      9.      The POLICY provided title insurance coverage.

20      10.     By the terms of the POLICY reproduced below, CHICAGO TITLE undertook to and did

21  insure Plaintiffs for the following covered risks of loss if these risks were suffered by these insureds:

22

23                                  **COVERED TITLE RISKS**

24  **This Policy covers the following title risks, if they affect your title on the Policy Date:**

25          **1.      Someone else owns an interest in your title.**

26          **2.      A document is not properly signed, sealed, acknowledged, or delivered.**

27          **3.      Forgery, fraud, duress, incompetency, incapacity or impersonation.**

28          **4.      Defective recording of any document.**

Cohon & Pollak,
LLP

**COMPLAINT FOR BREACH OF INSURANCE CONTRACT; REQUEST FOR JURY TRIAL**

5.   You do not have any legal right of access to and from the land.

6.   There are restrictive covenants limiting your use of the land.

7.   There is a lien on your title because of:

   .   a mortgage or deed of trust

   .   a judgment, tax, or special assessment

   .   a charge by a homeowner's or condominium association

8.   There are liens on your title, arising now or later, for labor and material furnished before the Policy Date -- unless you agreed to pay for the labor and material.

9.   Others have rights arising out of leases, contracts, or options.

10.  Someone else has an easement on your land.

11.  Your title is unmarketable, which allows another person to refuse to perform a contract to purchase, to lease or to make a mortgage loan.

12.  You are forced to remove your existing structure -- other than a boundary wall or fence -- because:

   .   it extends on to adjoining land or on to any easement

   .   it violates a restriction shown in Schedule B

   .   it violates an existing zoning law

13.  You cannot use the land because use as a single-family residence violates a restriction shown in Schedule B or an existing zoning law.

14.  Other defects, liens, or encumbrances.

11.   By the terms of the POLICY, CHICAGO TITLE undertook to and did insure the real property located at 11655 Ohio Avenue, Los Angeles, California (the "subject property").

12.   At all relevant times, the POLICY was kept in force through the payment of premiums with the expectation that should THE COHON INSUREDS suffer a loss resulting from a covered risk, CHICAGO TITLE would honor its representations in the POLICY and its obligations under applicable law and would indemnify THE COHON INSUREDS as required.

3

## FACTUAL BACKGROUND

13.     THE COHON INSUREDS purchased the subject property on March 13, 1992. The subject property is a 10-unit building and since the time of purchase has been a rental property with each unit rented as an individual apartment. Its status as a 10-unit building was established by the legal description of the subject real property included in the title documents relating to the subject legal property.

14.     In connection with the purchase of the subject property, United Title Company, as agent for CHICAGO TITLE, issued the POLICY, which insured title on the subject property as a 10-unit building, consistent with the foregoing legal description.

15.     Among the individual apartments located within the subject property is Unit 2, which from the time of the purchase of the subject property until May 4, 2009 was rented as an apartment designated as a single and rented as such.

16.     On or about November 8, 1994, THE COHON INSUREDS transferred the subject property to their revocable trust entitled the Cohon Family Trust.

17.     On or about May 4, 2009, THE COHON INSUREDS were notified by the Code Enforcement Section of the Los Angeles Housing Department that Unit 2was actually designated a "guest room" as opposed to an apartment designated as a "single," which could be legally rented as a "single." As a result, THE COHON INSUREDS were compelled to incur substantial renovation expenses to convert Unit 2 from a guest room into a light housekeeping unit, which was the only available alternative allowed by the City of Los Angeles, which would allow Unit 2 to be legally rented, as a "single".

18.     On or about August 24, 2009, THE COHON INSUREDS made due and timely demand of their claim on CHICAGO TITLE; namely, that THE COHON INSUREDS were entitled to reimbursement in full for the losses they had suffered in relation to the determination by the Code Enforcement Section of the Los Angeles Housing Department that the subject property was not a 10-unit building and their subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as a "single."

Cohon & Pollak,
LLP

4

19.   On or about March 4, 2010, CHICAGO TITLE, through correspondence, denied its duty to reimburse its insureds THE COHON INSUREDS for their losses under their POLICY in relation to the determination of the Code Enforcement Section of the Los Angeles Housing Department that the subject property was not a 10-unit building and THE COHON INSUREDS' subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as such. A copy of CHICAGO TITLE's March 4, 2010 correspondence is attached hereto as "EXHIBIT A."

20.   In its March 4, 2010 correspondence, CHICAGO TITLE denied its duty to reimburse THE COHON INSUREDS for their losses under their POLICY based on its claim that, "Fidelity is under no obligation to insure a claim unless a policy can be produced by the insured."

21.   In its March 4, 2010 correspondence, CHICAGO TITLE also denied its duty to reimburse THE COHON INSUREDS for their losses under their POLICY based on its claim that, "Even assuming that United issued to you a policy as referenced on the Preliminary Report, Fidelity respectfully asserts that coverage would still not be afforded for your claim because of the voluntary transfer of the Property to the Cohon Family Trust."

22.   In view of CHICAGO TITLE's denial of coverage to THE COHON INSUREDS based on CHICAGO TITLE's claims that "Fidelity is under no obligation to insure a claim unless a policy can be produced by the insured" and "Even assuming that United issued to you a policy as referenced on the Preliminary Report, Fidelity respectfully asserts that coverage would still not be afforded for your claim because of the voluntary transfer of the Property to the Cohon Family Trust," THE COHON INSUREDS' counsel forwarded correspondence to CHICAGO TITLE on April 18, 2010 demanding immediate indemnification in this matter pursuant to the provisions of the POLICY. The April 18, 2010 correspondence provided, in detail, the legal authority in California that provides: (1) that an insurer cannot escape its coverage obligations based on a failure of the insured to produce a copy of the relevant policy, and (2) that the transfer of the subject property to THE COHON INSUREDS' family trust did not affect coverage under the POLICY. A copy of THE COHON INSUREDS' counsel's April 18, 2010 correspondence is attached hereto as "EXHIBIT B."

23.   On or about June 14, 2010, CHICAGO TITLE forwarded additional correspondence to THE COHON INSUREDS' counsel wherein it continued to deny its duty to reimburse THE COHON

5

**COMPLAINT FOR BREACH OF INSURANCE CONTRACT; REQUEST FOR JURY TRIAL**

INSUREDS for their losses under their POLICY in relation to the determination of the Code Enforcement Section of the Los Angeles Housing Department that the subject property was not a 10-unit building and THE COHON INSUREDS' subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as such. A copy of CHICAGO TITLE's June 14, 2010 correspondence is attached hereto as "EXHIBIT C."

24.    In its June 14, 2010 correspondence, CHICAGO TITLE abandoned its initial basis for its denial of coverage (i.e., that it was under no obligation to insure a claim unless a policy could be produced by the insureds). Having failed in its attempt to convince its insureds not to pursue their claim based on law that CHICAGO TITLE knew to be false, CHICAGO TITLE in its June 14, 2010 correspondence now based its denial on portions of a coverage form, the Chicago Title Insurance Company CLTA 1990 Policy Form, that it knew was never a part of the contract of insurance between CHICAGO TITLE and its insureds THE COHON INSUREDS.

25.    In its June 14, 2010 correspondence, CHICAGO TITLE also denied its duty to reimburse THE COHON INSUREDS for their losses under their POLICY based on a zoning exclusion that has no application to the facts underlying THE COHON INSUREDS' losses.

26.    In view of CHICAGO TITLE's continued denial of coverage, based upon CHICAGO TITLE's newly invented and wholly improper grounds outlined above, THE COHON INSUREDS' counsel forwarded correspondence to CHICAGO TITLE on July 13, 2010 reasserting THE COHON INSUREDS' demand for immediate indemnification in this matter pursuant to the provisions of their POLICY. The July 13, 2010 correspondence provided, in detail, the legal authority for coverage under the relevant coverage form; i.e., the ALTA Residential Title Insurance Policy Adopted 6/1/87. A copy of THE COHON INSUREDS' counsel's July 13, 2010 correspondence is attached hereto as "EXHIBIT D."

27.    On or about September 21, 2010, CHICAGO TITLE forwarded additional correspondence to THE COHON INSUREDS' counsel wherein it continued to deny its duty to reimburse its insureds THE COHON INSUREDS for their losses under their POLICY in relation to the determination of the Code Enforcement Section of the Los Angeles Housing Department that the subject property was not a 10-unit building and THE COHON INSUREDS' subsequent necessary

6

COMPLAINT FOR BREACH OF INSURANCE CONTRACT; REQUEST FOR JURY TRIAL

1  expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as

2  such. A copy of CHICAGO TITLE's September 21, 2010 correspondence is attached hereto as

3  "EXHIBIT E."

4       28.    In its September 21, 2010 correspondence, CHICAGO TITLE, having abandoned its

5  several other obviously improper bases to avoid its coverage obligations, again denied its duty to

6  reimburse its insureds THE COHON INSUREDS for their losses under their POLICY based on the

7  inapplicable zoning exclusion that it first referenced in its correspondence of June 14, 2010.

8       29.    As a result of CHICAGO TITLE's failure to reimburse THE COHON INSUREDS for

9  their covered losses under their POLICY, THE COHON INSUREDS have been compelled to file this

10  lawsuit.

11  **FIRST CAUSE OF ACTION**

12  **(BREACH OF INSURANCE CONTRACT)**

13       30.    Each of the allegations above in paragraphs 1 through 29 is incorporated herein as part

14  of this First Cause of Action.

15       31.    As a result of the POLICY, there existed between Plaintiffs THE COHON INSUREDS

16  and Defendant CHICAGO TITLE a contractual relationship whereby Defendant had a duty to reimburse

17  Plaintiffs for their covered losses in accordance with their POLICY and the law.  Furthermore, in the

18  event Defendant's duty to indemnify was triggered, Defendant, as a result of the aforementioned

19  contractual relationship, was obligated to indemnify Plaintiffs in a manner consistent with the POLICY

20  and applicable law.

21       32.    Pursuant to the terms of the POLICY, Plaintiffs were entitled to reimbursement of their

22  losses in relation to the determination of the Code Enforcement Section of the Los Angeles Housing

23  Department that the subject property was not a 10-unit building and Plaintiffs' subsequent necessary

24  expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as a

25  "single".

26       33.    Irrespective of the above, Defendant now contends that it had no duty to reimburse

27  Plaintiffs' losses in relation to the determination of the Code Enforcement Section of the Los Angeles

28  Housing Department that the subject property was not a 10-unit building and their subsequent necessary

1    expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as such.

2    Defendant therefore has breached its duty to indemnify and has breached and violated its contractual

3    relationship with Plaintiffs.

4         34.    As a proximate result of this conduct, Plaintiffs have suffered damages in the form of

5    lost rents and substantial expenses to convert Unit 2 into a light housekeeping unit which could then

6    be legally rented, as a "single".

7                        **SECOND CAUSE OF ACTION**

8                          **(DECLARATORY RELIEF)**

9         35.    Plaintiffs incorporate paragraphs 1 through 34, inclusive, by reference herein as if fully

10   set forth.

11        36.    An actual and justiciable controversy currently exists between Plaintiffs and Defendant

12   insofar as Plaintiffs contend that they are entitled to be indemnified for losses incurred in relation to the

13   determination of the Code Enforcement Section of the Los Angeles Housing Department that the

14   subject property was not a 10-unit building and Plaintiffs' subsequent necessary expenses in converting

15   Unit 2 into a light housekeeping unit which could then be legally rented, as a "single".  Defendant

16   denies that it has a duty to indemnify Plaintiffs for said losses.

17        37.    Plaintiffs accordingly seek a determination by the Court that Defendant must indemnify

18   Plaintiffs for its losses in relation to the determination of the Code Enforcement Section of the Los

19   Angeles Housing Department that the subject property was not a 10-unit building and Plaintiffs'

20   subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then

21   be legally rented, as a "single".

22                         **THIRD CAUSE OF ACTION**

23            **(BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING)**

24        38.    Plaintiffs incorporate paragraphs 1 through 38, inclusive, as if fully set forth herein.

25        39.    Implied in the POLICY is a covenant by Defendant that it will act in good faith and deal

26   fairly with its insureds, and that it will do nothing to interfere with its insureds' right to receive the

27   benefits of their POLICY.

28

40.     By the provisions of the POLICY, Defendant represented to Plaintiffs that if they complied with certain terms and conditions of the POLICY, Defendant would properly indemnify Plaintiffs for losses such as those related to the determination of the Code Enforcement Section of the Los Angeles Housing Department

that the subject property was not a 10-unit building and Plaintiffs' subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as such. Plaintiffs duly complied with the terms and conditions of the POLICY to be performed on their part and were legally entitled to indemnification in relation to their above-described losses.

41.     Notwithstanding the foregoing obligation, Defendant has refused to indemnify Plaintiffs for their above-described losses.

42.     In the course of responding to Plaintiffs' demand for coverage under their POLICY, Defendant falsely represented to Plaintiffs that Defendant was under no obligation to indemnify Plaintiffs' claim unless the POLICY could be produced by Plaintiffs. Defendant made this representation with the hope that Plaintiffs would not pursue their claim for coverage based upon law that Defendants knew to be false.

43.     In the course of responding to Plaintiffs' demand for coverage under their POLICY, Defendant also falsely represented to Plaintiffs that the applicable coverage form relating to Plaintiffs' claim for coverage was the Chicago Title Insurance Company CLTA 1990 Policy Form. Defendant made this representation with the hope that Plaintiffs would not pursue their claim for coverage based upon exclusions in the Chicago Title Insurance Company CLTA 1990 Policy Form, although this coverage form had no connection to the contract of insurance between Defendant CHICAGO TITLE and plaintiffs THE COHON INSUREDS.

44.     By failing and refusing to indemnify Plaintiffs for their losses in relation to the determination of the Code Enforcement Section of the Los Angeles Housing Department

that the subject property was not a 10-unit building and Plaintiffs' subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as such, Defendant has breached its duty to indemnify and has breached and violated its contractual relationship with Plaintiffs.

45.     At the time Defendant was first informed that Plaintiffs had incurred losses covered under their POLICY, Defendant knew that it was obligated under the POLICY to indemnify Plaintiffs for those losses. Nonetheless, Defendant elected not to indemnify Plaintiffs for their losses because it was in its financial interest not to indemnify Plaintiffs.

46.     In breaching its duties to defend and indemnify, Defendant breached its duty of good faith and fair dealing owed to Plaintiffs in the following respects:

a.      Unreasonably and in bad faith failing and refusing to indemnify Plaintiffs THE COHON INSUREDS for their losses in relation to the determination of the Code Enforcement Section of the Los Angeles Housing Department that the subject property was not a 10-unit building and Plaintiffs' subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as a "single";

b.      Unreasonably and in bad faith misrepresenting to Plaintiffs that Defendant had no duty to indemnify Plaintiffs for their losses;

c.      Unreasonably and in bad faith misrepresenting to Plaintiffs that Defendant was under no obligation to insure their claim unless the POLICY could be produced by Plaintiffs;

d.      Unreasonably and in bad faith misrepresenting to Plaintiffs that the applicable coverage form relating to their claim for coverage was the Chicago Title Insurance Company CLTA 1990 Policy Form;

e.      Failing to reasonably, thoroughly and promptly investigate and determine that its coverage position that it had no duty to indemnify Plaintiffs for their above-described losses was not supported by the POLICY;

f.      Failing to treat, consider, or respect the financial interests of Plaintiffs THE COHON INSUREDS in the same manner as it treated, considered or respected the financial interests of itself; and

g.      Violating regulations promulgated by the California Department of Insurance governing the handling and administration of insureds' claims.

10

COMPLAINT FOR BREACH OF INSURANCE CONTRACT; REQUEST FOR JURY TRIAL

47.     Furthermore, the failure and refusal of Defendant to indemnify Plaintiffs for their losses in relation to the determination of the Code Enforcement Section of the Los Angeles Housing Department that the subject property was not a 10-unit building and Plaintiffs' subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as such, was without good cause and was in bad faith. Defendant knew it had no justification for its failure to indemnify Plaintiffs for their losses when it adopted a coverage position that was not supported by the POLICY.

48.     As a proximate result of Defendant's unreasonable bad faith conduct as herein alleged, Plaintiffs have suffered damages in the form of economic and consequential damages in an amount to be proven at trial.

49.     As a proximate result of Defendant's unreasonable bad faith conduct as herein alleged, Plaintiffs have also been forced to file this lawsuit to obtain the benefits due to them under their POLICY and Plaintiffs, thereby, have suffered and will continue to suffer damages in the form of Brandt fees.

WHEREFORE, Plaintiffs pray for Judgment as follows:

a.     Compensatory damages according to proof, but in no event less than $100,000, including, but not limited to, damages for breach of insurance contract and breach of the covenant of good faith and fair dealing implied in the POLICY;

b.     Attorneys' fees and expenses incurred by Plaintiffs to obtain the POLICY benefits, the exact amount of which is to be determined at trial, as provided by *Brandt v. Superior Court* (1985) 37 Cal.3d 813;

c.     Interest as permitted by law and according to proof;

d.     For a declaration of rights, including the right to indemnification for the losses incurred by Plaintiffs in relation to the determination of the Code Enforcement Section of the Los Angeles Housing Department that the subject property was not a 10-unit building and Plaintiffs' subsequent necessary expenses in converting Unit 2 into a light housekeeping unit which could then be legally rented, as a "single";

Cohon & Pollak,
LLP

11

1      e.     For costs of suit herein incurred; and

2      f.     For such other and further relief as the Court may deem proper.

3

4

5   DATED: September 26, 2011        COHON & POLLAK, LLP

6

7                     By:              

8                           JEFFREY M. COHON
                          Attorneys for Plaintiffs

9                           BENNETT B. COHON and MARILYN COHON

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12

COMPLAINT FOR BREACH OF INSURANCE CONTRACT; REQUEST FOR JURY TRIAL

## REQUEST FOR JURY TRIAL

Plaintiffs BENNETT B. COHON and MARILYN COHON hereby request a jury trial on all issues triable by a jury.

DATED:   September 26, 2011              COHON & POLLAK, LLP

By:   _____
                JEFFREY M. COHON
                Attorneys for Plaintiffs
                BENNETT B. COHON and MARILYN COHON

**COMPLAINT FOR BREACH OF INSURANCE CONTRACT; REQUEST FOR JURY TRIAL**

EXHIBIT "A"

# Fidelity National Title

INSURANCE COMPANY

March 4, 2010

Bennett and Marilyn Cohon
1906 Prosser Ave.
Los Angeles, CA 90025

Re:   Claim No.:   363416
      Claimant:    Bennett B. Cohon and Marilyn Cohon
      Property:    11655 Ohio Ave.
                   Los Angeles, CA 90025

Dear Mr. and Mrs. Cohon:

Fidelity National Title Insurance Company ("Fidelity") is in receipt of your claim regarding the real property located at the above indicated address (the "Property"). As explained below, the claim is not afforded coverage.

The Company understands the facts to be as follows. You assert that you purchased the Property on March 13, 1992 as a 10-unit building and have rented certain rooms as apartments. On November 21, 1994 you transferred the Property to the Cohon Family Trust through a grant deed recorded with the Los Angeles County Recorder on November 21, 1994, as instrument no. 2093281. On May 4, 2009, you were informed by the Los Angeles Housing Department that Apartment #2 is actually a guest room and not a full and complete apartment. As a result, you cannot continue to rent that apartment.

You have provided Fidelity with a preliminary report (the "Preliminary Report") from United Title Company ("United") dated January 2, 1992, but have not been able to locate, and have not provided to Fidelity, a copy of any policy issued to you by United.

Fidelity is under no obligation to insure a claim unless a policy can be produced by the insured. On that basis, your claim is not afforded coverage.

Even assuming that United issued to you a policy as referenced on the Preliminary Report, Fidelity respectfully asserts that coverage would still not be afforded for your claim because of your voluntary transfer of the Property to the Cohon Family Trust.

The voluntary transfer of the insured property into a related entity such as a trust or limited liability company has been held by the courts to terminate the coverage of a title insurance policy. *Kwok v. Transnation Title Ins. Co.*, 170 Cal. App. 4th 1562 (Cal. App. 2d Dist. 2009); *Covalt, Trustee v. First American Title Ins. Co.*, 1997 WL 4273 (10th Cir. Wyoming 1997) (unpublished). While coverage may continue in successors to the insured under a title insurance policy, successors by operation of law include only those parties who take through the insured automatically and by law on the insured's death or dissolution. *Butera v. Attorneys' Title Guar.*

Bennett and Marilyn Cohon
March 4, 2010
Page 2

*Fund, Inc.*, 321 Ill.App.3d 601, 704 N.E.2d 949 (Ill.App. 1 Dist. 2001). The *Butera* court also
held that "'purchase' in real estate law covers any acquisition of title by the voluntary act of the
parties."

If you do not agree with our position or if you have information or documentation of which we
are not aware, and that you believe gives rise to a covered claim, please let me know. If you have
any further questions or concerns regarding this claim, please do not hesitate to contact me. If I
do not receive additional information or documentation, your claim file will be closed in 30 days
from the date of this letter.

Enclosed is a "Notice to Claimant When Your Claim Has Been Denied" for your reference. This
notice is provided pursuant to state regulations and contains certain information that may be of
assistance to claimants whose claims have been denied.

Sincerely,

Tamar Schiller, Esq.
Claims Counsel
Fidelity National Title Group
6601 Frances Street
Omaha, NE 68106
Main Tel: (888) 453-4095
Direct Tel: (402) 970-3949
Fax: (402) 498-7894
Tamar.Schiller@fnf.com

Enc.

EXHIBIT "B"

# COHON & POLLAK, LLP

1999 AVENUE OF THE STARS, SUITE 1100
LOS ANGELES, CALIFORNIA 90067
(310) 231-4470   FAX (310) 231-4610

| | | | |
|---|---|---|---|
| **To:** | Tamar Schiller, Esq. | **From:** | Henry Nicholls |
| **Fax:** | (402) 498-7894 | **Pages:** | 5 (including cover sheet) |
| **Phone:** | | **Date:** | 4/18/10 |
| **Re:** | Bennett B. Cohon & Marilyn Cohon | **CC:** | |

# COHON & POLLAK, LLP

ATTORNEYS AT LAW

JEFFREY M. COHON
HOWARD A. POLLAK

KRISTINA S. KELLER
HENRY NICHOLLS

———

OF COUNSEL
JOHN T. McDOWELL

1999 AVENUE OF THE STARS
SUITE 1100
LOS ANGELES, CALIFORNIA 90067
(310) 231-4470 • FAX (310) 231-4610

3075 EAST THOUSAND OAKS BOULEVARD
SUITE 100
WESTLAKE VILLAGE, CALIFORNIA 91362
(805) 494-4470 • FAX (805) 494-4610

REPLY TO: LOS ANGELES

April 18, 2010

VIA FACSIMILE (402) 498-7894
AND U.S. MAIL

Tamar Schiller, Esq.
Claims Counsel
Fidelity National Title Group
6601 Frances Street
Omaha, NE 68106

|  |  |
|---|---|
| Insured: | Bennett B. Cohon and Marilyn Cohon |
| Insurer: | United Title Company |
| Claim No. | 363416 |
| Matter: | 11655 Ohio Ave., Los Angeles, California 90025 |

Dear Ms. Schiller:

Our office is in receipt of your correspondence dated March 4, 2010.

My understanding is that on December 22, 2008, Fidelity National Financial, Inc. directly and through its underwriting subsidiaries acquired United Title Company. I assume it is on this basis that Fidelity National Title Group is responding to this claim under the subject United Title Company policy. Please inform me if this is incorrect.

Your letter states that United Title Company ("United") has no duty to indemnify its insureds Bennett B. Cohon and Marilyn Cohon, under the subject title insurance policy, for loss arising from actions taken by the Los Angeles Housing Department in relation to the property located at 11655 Ohio Ave., Los Angeles, California 90025.

This statement is inconsistent with relevant law in the State of California and the grounds on which United has couched its denial, are baseless. United's refusal to indemnify its insured under the current facts is so egregious as to represent a bad faith failure to discharge its obligations under the foregoing title insurance policy.

      1.      Law in Regards to a Lost Policy in California

2 | P a g e
Tamar Schiller, Esq.
April 18, 2010
Bennett Cohon et al

Your March 4, 2010 correspondence makes the false statement that "Fidelity is under no obligation to insure a claim unless a policy can be produced by the insured." Under California law, that position was expressly rejected by the California Supreme Court in the decision of *Dart Industries, Inc. v. Commercial Union Insurance Co.*, 28 Cal.4th 1059,52 P.3d 79 (2002).

In the *Dart* case, the California Supreme Court considered the manner in which insurance coverage can be established through proof of "secondary evidence," i.e. evidence of the material terms of the policy other than the policy itself. As framed by the court, the seminal question in *Dart* concerned whether, and to what extent, the policyholder must prove the "actual language" that appears in its insurance policies to obtain an adjudication of its coverage claim.

The *Dart* court held that proof of the "actual" policy language was not necessary. Instead, when an insurance policy is lost or was destroyed without fraudulent intent, the policyholder simply "has the burden of proving (1) the fact that he or she was insured under the lost policy during the period at issue, and (2) the substance of each policy provision essential to the claim for relief, i.e., essential to the particular coverage that the insured claims." The insurance company is then charged with the burden of "proving the substance of any policy provision 'essential to the . . . defense'" Id. (citing Cal. Evid. Code § 500).

In rejecting the insurance company's contention that the policyholder must prove the actual language of the policy, the *Dart* court noted that there has never been an evidentiary requirement in California "to prove the contents of lost documents, be they insurance policies or otherwise." This was the case even though "it is a truism that we look to the language of a contract to ascertain its meaning." Instead, the court noted that California law has held for nearly one-hundred and fifty years that "the proponent of the lost document need only prove the relevant substance of the document." Id. (citing, among others, *Posten v. Rassette*, 5 Cal. 467, 469 (1855) ("In the case of lost instruments where no copy has been preserved, it is not expected that witnesses can recite its contents, word for word").

     2.     The Facts in This Case Render the *Kwok* and *Covalt* Decisions Inapposite

The *Dart* decision also demonstrates the falsity of your claim that the decisions of *Kwok v. Transnation Title Ins. Co.*, 170 Cal. App. 4th 1562 (2009) and *Covalt, Trustee v. First American Title Ins. Co.* 1997 WL 4273 (10th Cir. Wyoming 1997) support the proposition that a transfer of the subject property would terminate the title insurance coverage under the facts in the current matter. In both *Kwok* and *Covalt* the subject policy defined "insured" exclusive of certain subsequent transferees. As set out in *Dart*, with a lost policy, the insurance company (here United) has the burden of "proving the substance of any policy provision 'essential to the . . . defense'" I note that no policy language is cited in your letter to establish the existence of the type of restrictive definition of "insured" underlying the decisions in *Kwok* and *Covalt*. Your reliance on these decisions is therefore wholly inapposite under the facts in this matter.

3 | P a g e
Tamar Schiller, Esq.
April 18, 2010
Bennett Cohon et al

In point of fact, the policy form which is involved in this matter (American Land Title Association Loan Policy Form - Revised 10/17/92), provides the following unrestricted definition of "insured".

(a)     "insured": the insured named in Schedule A. The term "insured" also includes

      (i)     the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

      (ii)     any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

      (iii)     the parties designated in Section 2(a) of these Conditions and Stipulations.

Again, the decisions in *Kwok* and *Covalt* have no application to the current facts or the relevant policy.

3.     Conclusion

As you should be aware, the California courts have adopted a number of presumptions to remedy the inherent inequality in the claims process. First, the insurer must liberally construe coverage language while narrowly construing any policy exclusions. See, *Montrose Chemical Corp. vs. Admiral Ins. Co.*, 10 Cal.4th 645 (1995). ("We generally interpret the coverage clauses of insurance policies broadly, so as to protect the objectively reasonable expectations of the insured."). Second, the insurer must interpret any policy ambiguities against itself and in favor of its policyholder. See *Bareno vs. Employers Life Ins. Co.*, 7 Cal.3rd 875 (1972) ("Because the insurer writes the policy, it is held responsible for ambiguous policy language, which is therefore construed in favor of coverage."). The practical effect of the preceding rules is simple: An insurer must protect a policyholder's reasonable expectations, which are ordinarily to secure the broadest protection available. See *AIU Ins. Co. vs. Superior Court*, 51 Cal.3rd 807 (1990).

**4** | P a g e
Tamar Schiller, Esq.
April 18, 2010
Bennett Cohon et al

In addition to its duties of policy interpretation, an insurer must also treat the policyholder with the utmost fairness in a coverage dispute. First and foremost, the insurer must fairly investigate the policyholder's claim and consider all facts that might give rise to a finding of coverage. See *Egan vs. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809 (1979). Second, the insurer must give the policyholder's rights "at least as much" consideration as it gives its own interests. See *Crisci vs. Sec. Ins. Co.*, 66 Cal.2d 425 (1967).

United's conduct in refusing to provide Bennett B. Cohon and Marilyn Cohon indemnification, where that duty is clear, as set out above, violates each of these principles. United has narrowly construed its coverage grant and expansively construed its exclusions. United has construed all ambiguities in its favor and has refused to indemnify its insured where there is a obvious coverage under its policy. United has treated its insureds Bennett B. Cohon and Marilyn Cohon unfairly and has only considered those facts which it hopes would support a declination of coverage.

For these reasons, United has unreasonably denied this claim and provided the basis for its insureds Bennett B. Cohon and Marilyn Cohon to file suit against United for breach of the insurer's duty of good faith and fair dealing. As you should be aware, such an action exposes United to tort damages and, potentially, punitive damages. See *Neal vs. Farmers Ins. Exchange*, 21 Cal.3d 910 (1978). Moreover, United will be liable for its insured's attorneys' fees and costs in securing the benefits provided under the policy. *Brandt v. Superior Court* 37 Cal.3d 813 1985).

Based on the foregoing, Bennett B. Cohon and Marilyn Cohon demand immediate indemnification in this matter pursuant to the provisions of United's title insurance policy.

Please note that nothing in this correspondence should be construed as a waiver of any of the rights of Bennett B. Cohon and Marilyn Cohon under the foregoing policy.

Sincerely,

Henry Nicholls for
Cohon & Pollak, LLP

cc:    Bennett B. Cohon and Marilyn Cohon

**HP Officejet 6500 E709a All-in-One series**

**Fax Log for**
Cohon & Pollak
9082695494
Apr 18 2010 5:22PM

**Last Transaction**

| Date | Time | Type | Station ID | Duration | Pages | Result |
|------|------|------|------------|----------|-------|--------|
| | | | | Digital Fax | | |
| Apr 18 | 5:19PM | Fax Sent | 14024987894 | 2:39 N/A | 5 | OK |

**Note:**

Image on Fax Send Report is set to Off

An image of page 1 will appear here for faxes that are sent as Scan and Fax.

EXHIBIT "C"

# CHICAGO TITLE INSURANCE COMPANY

6601 FRANCES STREET, OMAHA, NE 68106 • TEL: (402) 498-7000 • (888) 453-4095



June 14, 2010

Henry Nicholls
Cohon & Pollak, LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067

Re:  Claim No.:   363416
     Policy No.:   05-0059-97-010503
     Insured:   Bennett B. Cohon and Marilyn Cohon
     Property:   11655 Ohio Ave.
                Los Angeles, CA 90025

Dear Mr. Nicholls:

Chicago Title Insurance Company ("Chicago Title") is in receipt of your letter dated April 18, 2010 regarding the March 4, 2010 denial of the claim made by Bennett and Marilyn Cohon on the property located at 11655 Ohio Avenue, Los Angeles, CA. Upon extensive research, we were able to determine that the Cohons were in fact insured under a policy issued by United Title Company as agent for Chicago (Policy No. 05-0059-97-010503). I am enclosing a copy of both the owner's and lenders policies for their records, as well as a sample jacket showing the terms and conditions of the owner's policy. The policy is an ALTA Residential Owners Policy (6-1-87) and the effective policy date is March 13, 1992.

Chicago Title has completed its further investigation of the claim and has determined that this is not a matter for which coverage will be afforded under the policy.

The facts as we understand are as follows. The insureds state that they purchased a 10-unit apartment building and since the policy date have rented the particular apartment in question, Apartment #2, as a full and complete apartment. On or about May 4, 2009, they were notified by the Los Angeles Housing Department that Apartment #2 is actually a guest room, not a full and complete apartment. As a result, the insureds cannot continue to rent Apartment #2 as a full and complete apartment. The insureds assert this will result in the loss of income. Additionally, the insureds assert that they are in the process of converting the unit from a guest room to a light housekeeping unit, which has caused them to incur substantial expenses to complete the conversion. The insureds state in their claim letter that

> All of the documents which relate to the purchase of the real property such as the Offer and Acceptance, Escrow Instructions, Loan Application and Los Angeles County Assessors Records clearly state that the apartment building is a 10-unit building.

As the policy has been retrieved by Chicago Title, your statements and assertions regarding the burden of establishing the policy's terms are moot and will not be addressed in this response.

Transfer to Revocable Trust

Section 2 of the Conditions of the policy defines the Continuation of Coverage:

Henry Nicholls
June 14, 2010
Page 2

This policy protects you as long as you:
- Own your title, or
- Own a mortgage from anyone who buys your land, or
- Are liable for any title warranties you make.

This policy protects anyone who receives your title because of your death.

The coverage of the policy continues in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. However, the policy does not continue in force in favor of any purchaser from an insured of either said estate or interest or the indebtedness secured by a purchase money mortgage given to an insured.

The voluntary transfer of the insured property into a related entity such as a trust or limited liability company has been held by the courts to terminate the coverage of a title insurance policy. *Kwok* v. *Transnation Title Ins. Co.*, 170 Cal. App. 4th 1562 (Cal. App. 2d Dist. 2009); *Covalt, Trustee* v. *First American Title Ins. Co.*, 1997 WL 4273 (10th Cir. Wyoming 1997) (unpublished). While coverage may continue for successors to the insured under a title insurance policy, such successors must take title by operation of law and only those parties who take through the insured automatically and by law on the insured's death or dissolution. *Butera* v. *Attorneys' Title Guar. Fund, Inc.*, 321 Ill.App.3d 601, 704 N.E.2d 949 (Ill.App. 1 Dist. 2001). The *Butera* court also held that "'purchase' in real estate law covers any acquisition of title by the voluntary act of the parties."

An insured must have an insurable interest when the policy is issued and when the loss occurs. (Ins. Code §286; *Hoffman* v. *State Farm Fire & Cas. Co.*, 16 Cal.App.4th 184, 190 (1993).) The standard coverage policy's insuring provision states (emphasis added):

> SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, [Name of Underwriter] herein called the Company, insures, as of Date of Policy shown in Schedule A, *against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of...*

The specific form of the policy in question here states:

> This policy insures *your title* to the land described in Schedule A... effective on the Policy Date shown in Schedule A... We insure against *actual loss* resulting from:
> - any title risks covered by the Policy—up to the Policy Amount, and
> - any costs, attorneys' fees and expenses we have to pay under this Policy.

Accordingly, only loss suffered by the named insured is compensable. As discussed, once property is transferred to the trustee, the named insured cannot suffer a compensable loss because he/she no longer owns the property. Coverage does not extend to beneficial owners. Legal title has been transferred to the trustee of the trust. Any loss suffered after the trustee has taken legal title to the property is suffered by the trustee in that capacity, not by the named insured.

The Cohon Family Trust is not an insured under the policy and Bennett and Marilyn Cohon no longer have continued coverage under Section 2 of the Conditions. Because the 1994 transfer from Bennett and Marilyn Cohon to the Cohon Family Trust was a voluntary transfer, and because the Cohon Family Trust

Henry Nicholls
June 14, 2010
Page 3

is not a successor to Bennett and Marilyn Cohon by operation of law, the claim is not afforded coverage under the policy.

Policy Type and Analysis

The policy insures against actual loss resulting from one or more of the 14 listed Covered Title Risks if they affect the insured land on the policy date and the land is a one-to-four family residential lot or condominium unit. As the building on the land is not a one-to-four family residential lot or condominium unit, but rather a 9 or 10 unit apartment building, this form of policy is not appropriate and should not have been issued by United Title Company. In this circumstance the standard policy available at the time of issuance—here the CLTA Standard Coverage Policy (1990) which contains 4 Covered Risks—should have been issued. A copy of this policy's terms is enclosed for your review. However, notwithstanding the fact that Bennett and Marilyn Cohon are no longer insureds, under either policy the claim is not a covered matter.

Under the 1987 Residential Owner's Policy, possible avenues for coverage are Covered Title Risks 12, 13 and 14.

12.   You are forced to remove your existing structure—other than a boundary wall or fence—because:
  • it extends on to adjoining land or on to any easement
  • it violates a restriction shown in Schedule B
  • it violates an existing zoning law
13.   You cannot use the land because use as a single-family residence violates a restriction shown in Schedule B or an existing zoning law.
14.   Other defects, liens or encumbrances.

However, Covered Title Risk 12 is not applicable because the insureds are not being forced to remove an existing structure due to a violation of zoning law. The insured has not suffered loss immediately on learning that a structure encroaches, or violates a restriction or zoning ordinance. When one is "forced" to remove something, the implication is that there has already been an action seeking the removal, which has resulted in an order or judgment. Covered Title Risk 13 is not applicable because the insureds are not using the land as a single-family residence. Thus, the policy does not insure against a violation of a zoning ordinance or restriction caused by use of the property for more than one unit. Covered Title Risk 14 is not applicable because the claim does not result from a title risk. The claim is a condition on the land. There is nothing in the public record from which one would know there is a defect, lien or encumbrance that relates to the number of units.

Under the section marked Exclusions,

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.   Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:
  • land use
  • improvements on the land
  • land division

Henry Nicholls
June 14, 2010
Page 4

     •  environmental protection

This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.

This exclusion does not limit the zoning coverage described in Items 12 and 13 of Covered Title Risks.

3.  Title Risks:
     •  That first affect your title after the Policy Date...

Under the section marked Conditions,

1.  Definitions
    d.  Public Records—title records that give constructive notice of matters affecting your title—according to the state statutes where your land is located.

An examination of the title record shows no notices of any zoning violation regarding the use of Apartment #2 as a full and complete apartment recorded in the public records as of the policy date. In fact, there is still nothing present in the public records as of our last search of February 23, 2010 that would indicate a zoning violation on the property.

Accordingly, as no violations appear in the public records as of the policy date, and because the zoning issue appears to have occurred after the policy date, this matter is excluded from coverage under Exclusions 1 and 3.

Similarly, under the CLTA 1990 Standard Coverage Policy, none of the four covered risks are applicable to this matter. Those covered risks are:

1.     Title to the estate or interest described in Schedule A being vested other than as stated therein;
2.     Any defect in or lien or encumbrance on the title;
3.     Unmarketability of the title;
4.     Lack of a right of access to and from the land

Even if one of the covered risks were applicable, under that policy's Exclusions from Coverage this matter is excluded from coverage under Exclusions 1 and 3.

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.     (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

Henry Nicholls
June 14, 2010
Page 5

(b)      Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

3.      Defects, liens, encumbrances, adverse claims or other matters:

(d)      attaching or created subsequent to Date of Policy.

Therefore, under either the 1987 Residential Owner's Policy or the 1990 CLTA Standard Coverage Policy, there is no coverage for this matter. Additionally, any loss of rental income sought in the claim does not fall within policy coverage.

If you do not agree with our position or if you have information or documentation of which we are not aware, and that you believe gives rise to a covered claim, please let me know. If you have any further questions or concerns regarding this claim, please do not hesitate to contact me. If I do not receive additional information or documentation, your claim file will be closed in 30 days from the date of this letter.

Enclosed is a "Notice to Claimant When Your Claim Has Been Denied" for your reference. This notice is provided pursuant to state regulations and contains certain information that may be of assistance to claimants whose claims have been denied.

Sincerely,

Tamar Schiller, Esq.
Claims Counsel
Fidelity National Title Group
6601 Frances Street
Omaha, NE 68106
Main Tel: (888) 453-4095
Direct Tel: (402) 970-3949
Fax: (402) 498-7894
Tamar.Schiller@fnf.com

Enc. (2)

## NOTICE TO CLAIMANT

## WHEN YOUR CLAIM HAS BEEN DENIED

You have various rights, and limitations upon those rights, as provided in the policy or guarantee, under state or federal law, or under governmental regulations. *It is important that you are aware of the following:*

### ARBITRATION

Your policy or guarantee may give you, and the Company, the right to Arbitration. If the right to Arbitration is contained in the Conditions and Stipulations of the policy or guarantee, then you may request that a neutral Arbitrator hear any coverage decision made by the Company. If you should decide to seek Arbitration, then the Company upon request will provide a copy of the Rules for Arbitration to you.

### COMPLAINTS TO THE INSURANCE COMMISSIONER

If you feel that your claim has not been properly handled, then you may file a complaint with the Department of Insurance at 300 South Spring Street, Suite 201, Los Angeles, California 90013. The telephone number is (213) 897-8921.

### STATUTE OF LIMITATIONS

*California Code of Civil Procedure §339* provides that the aggrieved party must file an action on a guaranty of title or policy of title insurance within two (2) years from the discovery of the loss or damage. The statute of limitations may be longer in other states.

CALIFORNIA LAND TITLE ASSOCIATION
STANDARD COVERAGE POLICY 1990

# CHICAGO TITLE INSURANCE COMPANY

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, CHICAGO TITLE INSURANCE COMPANY, a Nebraska corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land;
   and in addition, as to an insured lender only:
5. The invalidity or unenforceability of the lien of the insured mortgage upon the title;
6. The priority of any lien or encumbrance over the lien of the insured mortgage, said mortgage being shown in Schedule B in the order of its priority;
7. The invalidity or unenforceability of any assignment of the insured mortgage, provided the assignment is shown in Schedule B, or the failure of the assignment shown in Schedule B to vest title to the insured mortgage in the named insured assignee free and clear of all liens.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

*In Witness Whereof,* CHICAGO TITLE INSURANCE COMPANY has caused this policy to be signed and sealed as of Date of Policy shown in Schedule A, the policy to become valid when countersigned by an authorized signatory.

ISSUED BY:
CHICAGO TITLE INSURANCE CO. (LSI DIVISION)
800-323-0165

CHICAGO TITLE INSURANCE COMPANY

By:

President

ATTEST

Secretary

# EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws.

# CONDITIONS AND STIPULATIONS

## 1. DEFINITION OF TERMS

The following terms when used in this policy mean:

(a) "insured": the insured named in Schedule A, and, subject to any rights or defenses the Company would have had against the named insured, those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors. The term "insured" also includes

(i) the owner of the indebtedness secured by the insured mortgage and each successor in ownership of the indebtedness except a successor who is an obligor under the provisions of Section 12(c) of these Conditions and Stipulations (reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor insured, unless the successor acquired the indebtedness as a purchaser for value without knowledge of the asserted defect, lien, encumbrance, adverse claim or other matter insured against by this policy as affecting title to the estate or interest in the land);

(ii) any governmental agency or governmental instrumentality which is an insurer or guarantor under an insurance contract or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage, or any part thereof, whether named as an insured herein or not;

(iii) the parties designated in Section 2(a) of these Conditions and Stipulations.

(b) "insured claimant": an insured claiming loss or damage.

(c) "insured lender": the owner of an insured mortgage.

(d) "insured mortgage": a mortgage shown in Schedule B, the owner of which is named as an insured in Schedule A.

(e) "knowledge" or "known": actual knowledge, not constructive knowledge or notice which may be imputed to an insured by reason of the public records as defined in this policy or any other records which impart constructive notice of matters affecting the land.

(f) "land": the land described or referred to in Schedule A, and improvements affixed thereto which by law constitute real property. The term "land" does not include any property beyond the lines of the area described or referred to in Schedule A, nor any right, title, interest, estate or easement in abutting streets, roads, avenues, alleys, lanes, ways or waterways, but nothing herein shall modify or limit the extent to which a right of access to and from the land is insured by this policy.

(g) "mortgage": mortgage, deed of trust, trust deed, or other security instrument.

(h) "public records": records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without knowledge.

(i) "unmarketability of the title": an alleged or apparent matter affecting the title to the land, not excluded or excepted from coverage, which would entitle a purchaser of the estate or interest described in Schedule A or the insured

mortgage to be released from the obligation to purchase by virtue of a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE

(a) After Acquisition of Title by Insured Lender. If this policy insures the owner of the indebtedness secured by the insured mortgage, the coverage of this policy shall continue in force as of Date of Policy in favor of (i) such insured who acquires all or any part of the estate or interest in the land by foreclosure, trustee's sale, conveyance in lieu of foreclosure, or other legal manner which discharges the lien of the insured mortgage; (ii) a transferee of the estate or interest so acquired from an insured corporation, provided the transferee is the parent or wholly-owned subsidiary of the insured corporation, and their corporate successors by operation of law and not by purchase, subject to any rights or defenses the Company may have against any predecessor insureds; and (iii) any governmental agency or governmental instrumentality which acquires all or any part of the estate or interest pursuant to a contract of insurance or guaranty insuring or guaranteeing the indebtedness secured by the insured mortgage.

(b) After Conveyance of Title by an Insured. The coverage of this policy shall continue in force as of Date of Policy in favor of an insured only so long as the insured retains an estate or interest in the land, or holds an indebtedness secured by a purchase money mortgage given by a purchaser from the insured, or only so long as the insured shall have liability by reason of covenants of warranty made by the insured in any transfer or conveyance of the estate or interest. This policy shall not continue in force in favor of any purchaser from an insured of either (i) an estate or interest in the land, or (ii) an indebtedness secured by a purchase money mortgage given to an insured.

(c) Amount of Insurance. The amount of insurance after the acquisition or after the conveyance by an insured lender shall in neither event exceed the least of:

(i) the amount of insurance stated in Schedule A;

(ii) the amount of the principal of the indebtedness secured by the insured mortgage as of Date of Policy, interest thereon, expenses of foreclosure, amounts advanced pursuant to the insured mortgage to assure compliance with laws or to protect the lien of the insured mortgage prior to the time of acquisition of the estate or interest in the land and secured thereby and reasonable amounts expended to prevent deterioration of improvements, but reduced by the amount of all payments made; or

(iii) the amount paid by any governmental agency or governmental instrumentality, if the agency or instrumentality is the insured claimant, in the acquisition of the estate or interest in satisfaction of its insurance contract or guaranty.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT

An insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 4(a) below, (ii) in case knowledge shall come to an insured hereunder of any claim of title or interest which is adverse to the title to the estate or interest or the lien of the insured mortgage, as insured, and

which might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if title to the estate or interest or the lien of the insured mortgage, as insured, is rejected as unmarketable. If prompt notice shall not be given to the Company, then as to that insured all liability of the Company shall terminate with regard to the matter or matters for which prompt notice is required; provided, however, that failure to notify the Company shall in no case prejudice the rights of any insured under this policy unless the Company shall be prejudiced by the failure and then only to the extent of the prejudice.

### 4. DEFENSE AND PROSECUTION OF ACTIONS; DUTY OF INSURED CLAIMANT TO COOPERATE

(a) Upon written request by an insured and subject to the options contained in Section 6 of these Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of such insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as to those stated causes of action alleging a defect, lien or encumbrance or other matter insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of such insured to object for reasonable cause) to represent the insured as to those stated causes of action and shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs or expenses incurred by the insured in the defense of those causes of action which allege matters not insured against by this policy.

(b) The Company shall have the right, at its own cost, to institute and prosecute any action or proceeding or to do any other act which in its opinion may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured, or to prevent or reduce loss or damage to the insured. The Company may take any appropriate action under the terms of this policy, whether or not it shall be liable hereunder, and shall not thereby concede liability or waive any provision of this policy. If the Company shall exercise its rights under this paragraph, it shall do so diligently.

(c) Whenever the Company shall have brought an action or interposed a defense as required or permitted by the provisions of this policy, the Company may pursue any litigation to final determination by a court of competent jurisdiction and expressly reserves the right, in its sole discretion, to appeal from any adverse judgment or order.

(d) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding, an insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, and all appeals therein, and permit the Company to use, at its option, the name of such insured for this purpose. Whenever requested by the Company, an insured, at the Company's expense, shall give the Company all reasonable aid (i) in any action or proceeding, securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act which in the opinion of the Company may be necessary or desirable to establish the title to the estate or interest or the lien of the insured mortgage, as insured. If the Company is prejudiced by the failure of an insured to furnish the required cooperation, the Company's obligations to the insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

### 5. PROOF OF LOSS OR DAMAGE

In addition to and after the notices required under Section 3 of these Conditions and Stipulations have been provided the Company, a proof of loss or damage signed and sworn to by the insured claimant shall be furnished to the Company within 90 days after the insured claimant shall ascertain the facts giving rise to the loss or damage. The proof of loss or damage shall describe the defect in, or lien or encumbrance on the title, or other matter insured against by this policy which constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage. If the Company is prejudiced by the failure of an insured claimant to provide the required proof of loss or damage, the Company's obligations to such insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such proof of loss or damage.

In addition, an insured claimant may reasonably be required to submit to examination under oath by any authorized representative of the Company and shall produce for examination, inspection and copying, at such reasonable times and places as may be designated by any authorized representative of the Company, all records, books, ledgers, checks, correspondence and memoranda, whether bearing a date before or after Date of Policy, which reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the insured claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect and copy all records, books, ledgers, checks, correspondence and memoranda in the custody or control of a third party, which reasonably pertain to the loss or damage. All information designated as confidential by an insured claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of an insured claimant to submit for examination under oath, produce other reasonably requested information or grant permission to secure reasonably necessary information

from third parties as required in this paragraph, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that insured for that claim.

### 6. OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY

In case of a claim under this policy, the Company shall have the following additional options:

**(a) To Pay or Tender Payment of the Amount of Insurance or to Purchase the Indebtedness.**

(i) to pay or tender payment of the amount of insurance under this policy together with any costs, attorneys' fees and expenses incurred by the insured claimant, which were authorized by the Company, up to the time of payment or tender of payment and which the Company is obligated to pay; or

(ii) in case loss or damage is claimed under this policy by the owner of the indebtedness secured by the insured mortgage, to purchase the indebtedness secured by the insured mortgage for the amount owing thereon together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of purchase and which the Company is obligated to pay.

If the Company offers to purchase the indebtedness as herein provided, the owner of the indebtedness shall transfer, assign, and convey the indebtedness and the insured mortgage, together with any collateral security, to the Company upon payment therefor.

Upon the exercise by the Company of the option provided for in paragraph a(i), all liability and obligations to the insured under this policy, other than to make the payment required in that paragraph, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, and the policy shall be surrendered to the Company for cancellation.

Upon the exercise by the Company of the option provided for in paragraph a(ii) the Company's obligation to an insured lender under this policy for the claimed loss or damage, other than the payment required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

**(b) To Pay or Otherwise Settle With Parties Other than the Insured or With the Insured Claimant.**

(i) to pay or otherwise settle with other parties for or in the name of an insured claimant any claim insured against under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay; or

(ii) to pay or otherwise settle with the insured claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees and expenses incurred by the insured claimant which were authorized by the Company up to the time of payment and which the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in paragraphs (b)(i) or b(ii), the Company's obligations to the insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute or continue any litigation.

### 7. DETERMINATION AND EXTENT OF LIABILITY

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy to an insured lender shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A, or, if applicable, the amount of insurance as defined in Section 2 (c) of these Conditions and Stipulations;

(ii) the amount of the unpaid principal indebtedness secured by the insured mortgage as limited or provided under Section 8 of these Conditions and Stipulations or as reduced under Section 9 of these Conditions and Stipulations, at the time the loss or damage insured against by this policy occurs, together with interest thereon; or

(iii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the insured lender has acquired the estate or interest in the manner described in Section 2(a) of these Conditions and Stipulations or has conveyed the title, then the liability of the Company shall continue as set forth in Section 7(a) of these Conditions and Stipulations.

(c) The liability of the Company under this policy to an insured owner of the estate or interest in the land described in Schedule A shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A; or,

(ii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(d) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. LIMITATION OF LIABILITY**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, or otherwise establishes the lien of the insured mortgage, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title or, if applicable, to the lien of the insured mortgage, as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

(d) The Company shall not be liable to an insured lender for: (i) any indebtedness created subsequent to Date of Policy except for advances made to protect the lien of the insured mortgage and secured thereby and reasonable amounts expended to prevent deterioration of improvements; or (ii) construction loan advances made subsequent to Date of Policy, except construction loan advances made subsequent to Date of Policy for the purpose of financing in whole or in part the construction of an improvement to the land which at Date of Policy were secured by the insured mortgage and which the insured was and continued to be obligated to advance at and after Date of Policy.

**9. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

(a) All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto. However, as to an insured lender, any payments made prior to the acquisition of title to the estate or interest as provided in Section 2(a) of these Conditions and Stipulations shall not reduce pro tanto the amount of the insurance afforded under this policy as to any such insured except to the extent that the payments reduce the amount of the indebtedness secured by the insured mortgage.

(b) Payment in part by any person of the principal of the indebtedness, or any other obligation secured by the insured mortgage, or any voluntary partial satisfaction or release of the insured mortgage, to the extent of the payment, satisfaction or release, shall reduce the amount of insurance pro tanto. The amount of insurance may thereafter be increased by accruing interest and advances made to protect the lien of the insured mortgage and secured thereby, with interest thereon, provided in no event shall the amount of insurance be greater than the Amount of Insurance stated in Schedule A.

(c) Payment in full by any person or the voluntary satisfaction or release of the insured mortgage shall terminate all liability of the Company to an insured lender except as provided in Section 2(a) of these Conditions and Stipulations.

**10. LIABILITY NONCUMULATIVE**

It is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy to the insured owner.

The provisions of this Section shall not apply to an insured lender, unless such insured acquires title to said estate or interest in satisfaction of the indebtedness secured by an insured mortgage.

**11. PAYMENT OF LOSS**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**12. SUBROGATION UPON PAYMENT OR SETTLEMENT**

**(a) The Company's Right of Subrogation.**

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated (i) as to an insured owner, to all rights and remedies in the proportion which the Company's payment bears to the whole amount of loss; and (ii) as to an insured lender, to all rights and remedies of the insured claimant after the insured claimant shall have recovered its principal, interest, and costs of collection.

If loss should result from any act of the insured claimant, as stated above, that act shall not void this policy, but the Company, in that event, shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

**(b) The Insured's Rights and Limitations.**

Notwithstanding the foregoing, the owner of the indebtedness secured by an insured mortgage, provided the priority of the lien of the insured mortgage or its enforceability is not affected, may release or substitute the personal liability of any debtor or guarantor, or extend or otherwise modify the terms of payment, or release a portion of the estate or interest from the lien of the insured mortgage, or release any collateral security for the indebtedness.

When the permitted acts of the insured claimant occur and the insured has knowledge of any claim of title or interest adverse to the title to the estate or interest or the priority or enforceability of the lien of the insured mortgage, as insured, the Company shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

**(c) The Company's Rights Against Non-insured Obligors.**

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

The Company's right of subrogation shall not be avoided by acquisition of an insured mortgage by an obligor (except an obligor described in Section 1(a)(ii) of these Conditions and Stipulations) who acquires the insured mortgage as a result of an indemnity, guarantee, other policy of insurance, or bond and the obligor will not be an insured under this policy, notwithstanding Section 1(a)(i) of these Conditions and Stipulations.

**13. ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**14. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the lien of the insured mortgage, or of the title to the estate or interest covered hereby, or by any action asserting such claim shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**15. SEVERABILITY**

In the event any provision of this policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**16. NOTICES, WHERE SENT**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to the Company at the issuing office or to:

Chicago Title Insurance Company
National Claims Administration
P.O. Box 45023
Jacksonville, Florida 32232-5023

# EXHIBIT "D"

# COHON & POLLAK, LLP

1999 AVENUE OF THE STARS, SUITE 1100
LOS ANGELES, CALIFORNIA 90067
(310) 231-4470  FAX (310) 231-4610

| | | | |
|---|---|---|---|
| **To:** | Tamar Schiller | **From:** | Henry Nicholls |
| **Fax:** | (402) 498-7894 | **Pages:** | 8 (including cover sheet) |
| **Phone:** | | **Date:** | 7/13/10 |
| **Re:** | Cohon/United Title | **CC:** | |

# COHON & POLLAK, LLP

### ATTORNEYS AT LAW

JEFFREY M. COHON
HOWARD A. POLLAK

1999 AVENUE OF THE STARS
SUITE 1100
LOS ANGELES, CALIFORNIA 90067
(310) 231-4470 • FAX (310) 231-4610

KRISTINA S. KELLER
HENRY NICHOLLS

3075 EAST THOUSAND OAKS BOULEVARD
SUITE 100
WESTLAKE VILLAGE, CALIFORNIA 91362
(805) 494-4470 • FAX (805) 494-4610

July 13, 2010

REPLY TO: LOS ANGELES

OF COUNSEL

JOHN T. McDOWELL

VIA FACSIMILE (402) 498-7894
AND U.S. MAIL

Tamar Schiller, Esq.
Claims Counsel
Fidelity National Title Group
6601 Frances Street
Omaha, NE 68106

|  |  |
|---|---|
| Insured: | Bennett B. Cohon and Marilyn Cohon |
| Insurer: | United Title Company |
| Claim No.: | 363416 |
| Matter: | 11655 Ohio Ave., Los Angeles, California 90025 |
| Policy No.: | 05-0059-97-010503 |

Dear Ms. Schiller:

Our office is in receipt of your correspondence dated June 14, 2010.

First, I requested in my letter of April 18, 2010, that you clarify the relationship between United Title Company ("United"), the insurer, and Fidelity National Title Group ("Fidelity"), the entity on whose behalf you signed your letters of March 4, 2010 and June 14, 2010. Instead of responding to this request, you have now introduced a third entity, Chicago Title Insurance Company ("Chicago"), which is described as being in an agency relationship with United. As we apparently now agree that United issued the subject policy as the insurer, I will simply address the coverage issues below to United.

Second, your letter of June 14, 2010 states that it includes the "owner's and lender's policies". In fact, your letter did **not** include the "owner's and lender's policies" and only included a Chicago Title Insurance Company CLTA 1990 Policy Form ("CLTA Policy"), which bears no discernable relationship to these insureds or their policy with United.

Third, your letter of June 14, 2010, which alters the prior improper coverage position adopted by United in your letter of March 4, 2010, states that United has no duty to indemnify its insureds Bennett B. Cohon and Marilyn Cohon, under the subject title insurance policy, for loss arising

**2** | P a g e
Tamar Schiller, Esq.
July 13, 2010
Bennett Cohon et al

from actions taken by the Los Angeles Housing Department in relation to the property located at 11655 Ohio Ave., Los Angeles, California 90025.

This statement, as was the case with the prior coverage position set out in your letter of March 4, 2010, is inconsistent with relevant law in the State of California and the grounds, on which United has couched its denial, are baseless. United's refusal to indemnify its insured under the current facts continues to be so egregious as to represent a bad faith failure to discharge its obligations under the foregoing title insurance policy.

United, as an insurer doing business in California, has engaged in a pattern of deceptive practices as evidenced by the position previously espoused by you in your March 4, 2010 letter that "Fidelity is under no obligation to insure a claim unless a policy can be produced by the insured." United clearly hoped that it could dissuade its insureds from pursuing their legitimate claim, by providing a legal position that it knew was false. The falsity of that position is demonstrated by a review of the California Supreme Court in the decision of *Dart Industries, Inc. v. Commercial Union Insurance Co.*, 28 Cal.4th 1059,52 P.3d 79 (2002), which rejected the exact position set out in your letter of March 4, 2010. Only as a result of my letter of April 18, 2010, did United "find" the subject policy and retreat from its attempt to deny coverage based on a false assertion that in California an insurer is under no obligation to insure a claim unless a policy can be produced by the insured. This instance of bad faith by United is compounded by the additional baseless grounds on which United has attempted to deny coverage, as set out in your letter of June 14, 2010, and which are addressed below.

1.   United's continued reliance on the decisions of *Kwok* and *Covalt*, when those
     decisions have been shown not to apply, is another instance of bad faith by United

As pointed out in my letter of April 18, 2010, both the decision of *Kwok v. Transnation Title Ins. Co.*, 170 Cal. App. 4th 1562 (2009) and the decision of *Covalt, Trustee v. First American Title Ins. Co.* 1997 WL 4273 (10th Cir. Wyoming 1997) involve policies which define "insured" exclusive of certain subsequent transferees. (It should be noted as a dispute arising in California, the governing substantive law would be the *Kwok* decision.)

The policy language in *Kwok* was as follows:

> The policy defines "insured" as "the insured named in Schedule A, and, subject to any rights or defenses the Company would have had against the named insured, **those who succeed to the interest of the named insured by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors.**" Paragraph 2(b) of the conditions and stipulations of the policy provides: "The coverage

**3** | P a g e
Tamar Schiller, Esq.
July 13, 2010
Bennett Cohon et al

> of this policy shall continue in force as of Date of Policy in favor
> of an insured only so long as the insured retains an estate or
> interest in the land or holds an indebtedness secured by a purchase
> money mortgage given by a purchaser from the insured, or only so
> long as the insured shall have liability by reason of covenants of
> warranty made by the insured or any transfer or conveyance of the
> estate or interest." (emphasis added) *Kwok* at 1563.

If one accepts your contention that the applicable policy form which is involved in this matter is the ALTA Residential Title Insurance Policy - Adopted 6/1/87 ("ALTA Policy"), that policy form provides the following definition of "insured":

> This Policy protects you as long as you:
>
> > . own your title or
> > . own a mortgage from anyone who buys your land or
> > . are liable for any title warranties you make
>
> This Policy protects anyone who receives your title because of your death.

The *Kwok* decision was based solely on the language in the CLTA Policy involved in that case, language which provided that "under the terms of the policy, appellants could **only become insureds by operation of law.**" (emphasis added) *Kwok* at 1571. No such limitation exists in the ALTA Policy between the parties here and which you have quoted in your June 14, 2010 letter.

Thus, your contention that the ALTA Policy restricts coverage to transfers by operation of law, and that it specifically restricts coverage when there is a transfer to a family trust with the same individuals having the beneficial ownership interest before and after the transfer, is rejected as inconsistent with the policy language you have quoted and is not supported by the *Kwok* decision.

> 2.   United's attempt to unilaterally change the terms of the policy issue to the insured
>      to improperly exclude this claim from coverage, is another instance of bad faith
>      by United

Astonishingly, your letter of June 14, 2010 actually contends that the terms of the policy between these insureds and the insurer should be changed to benefit the insurer, because "...this form of the policy is not appropriate [referring to the ATLA policy form] and should not have been issued by United Title Company. In this circumstance the standard policy available at the time of issuance-here the CLTA Standard Coverage Policy (1990) which contains 4 Covered Risks-should have been issued."

**4 | P a g e**
Tamar Schiller, Esq.
July 13, 2010
Bennett Cohon et al

Unsurprisingly, the CLTA Policy form preferred by United, would restrict coverage to benefit United and for that reason its provisions are discussed in your letter, although it bears no relationship to the terms and conditions of the actual policy between these insureds and their insurer.

> 3.   The insureds' loss reflects an enumerated covered risk under the ALTA policy and is not excluded under any of the provisions of the ALTA policy

Contrary to your skewed reading of the ALTA Residential Title Insurance Policy - Adopted 6/1/87, the ALTA Policy enumerates under covered risk the loss suffered by these insureds

The covered risks are as follows:

COVERED TITLE RISKS

This Policy covers the following title risks, if they affect your title on the Policy Date:

1.   Someone else owns an interest in your title.

2.   A document is not properly signed, sealed, acknowledged, or delivered.

3.   Forgery, fraud, duress, incompetency, incapacity or impersonation.

4.   Defective recording of any document.

5.   You do not have any legal right of access to and from the land.

6.   There are restrictive covenants limiting your use of the land.

7.   There is a lien on your title because of:

> .   a mortgage or deed of trust
>
> .   a judgment, tax, or special assessment
>
> .   a charge by a homeowner's or condominium association

8.   There are liens on your title, arising now or later, for labor and material furnished before the Policy Date -- unless you agreed to pay for the labor and material.

9.   Others have rights arising out of leases, contracts, or options.

5 | P a g e
Tamar Schiller, Esq.
July 13, 2010
Bennett Cohon et al

10. Someone else has an easement on your land.

11. Your title is unmarketable, which allows another person to refuse to perform a contract to purchase, to lease or to make a mortgage loan.

12. You are forced to remove your existing structure -- other than a boundary wall or fence -- because:

   . it extends on to adjoining land or on to any easement

   . it violates a restriction shown in Schedule B

   . it violates an existing zoning law

13. You cannot use the land because use as a single-family residence violates a restriction shown in Schedule B or an existing zoning law.

14. Other defects, liens, or encumbrances.

Covered risk 14 clearly applies to the current circumstance where the description of the subject property included in the title documents, delineates that the property is a 10-unit apartment building and a subsequent determination was made by the Los Angeles Housing Department that the subject property was not compliant with the Certificate of Occupancy issued when the apartment building was constructed. As you may know, a Certificate of Occupancy ensures that construction is in conformance with approved plans and all applicable code requirements. The instant error was in the description of the subject property included in the title documents and represents a "defect" in the title of the subject property within the meaning of covered risk 14.

It should be noted that your letter of June 14, 2010 makes the false statement that "... the zoning issue appears to have occurred after the policy date, this matter is excluded from coverage..." This statement is false because there is no zoning issue in this matter. The defect in title does not relate to land use or any other aspect of zoning, as set out above the defect in title relates to building code requirements. For this reason, your attempt to apply exclusions related to zoning issues is incorrect and another instance of bad faith by United.

In passing, I note that your letter repeatedly makes mention of the policy provisions of the CLTA Policy which you included with your letter. As set out above, the CLTA Policy bears no discernable relationship to these insureds or their policy with United, I have therefore ignored your analysis of the CLTA Policy and its purported application to this matter.

4. Conclusion

6 | P a g e
Tamar Schiller, Esq.
July 13, 2010
Bennett Cohon et al

As indicated in my previous correspondence, the California courts have adopted a number of presumptions to remedy the inherent inequality in the claims process. First, the insurer must liberally construe coverage language while narrowly construing any policy exclusions. See, *Montrose Chemical Corp. vs. Admiral Ins. Co.*, 10 Cal.4th 645 (1995). ("We generally interpret the coverage clauses of insurance policies broadly, so as to protect the objectively reasonable expectations of the insured."). Second, the insurer must interpret any policy ambiguities against itself and in favor of its policyholder. See *Bareno vs. Employers Life Ins. Co.*, 7 Cal.3rd 875 (1972) ("Because the insurer writes the policy, it is held responsible for ambiguous policy language, which is therefore construed in favor of coverage."). The practical effect of the preceding rules is simple: An insurer must protect a policyholder's reasonable expectations, which are ordinarily to secure the broadest protection available. See *AIU Ins. Co. vs. Superior Court*, 51 Cal.3rd 807 (1990).

In addition to its duties of policy interpretation, an insurer must also treat the policyholder with the utmost fairness in a coverage dispute. First and foremost, the insurer must fairly investigate the policyholder's claim and consider all facts that might give rise to a finding of coverage. See *Egan vs. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809 (1979). Second, the insurer must give the policyholder's rights "at least as much" consideration as it gives its own interests. See *Crisci vs. Sec. Ins. Co.*, 66 Cal.2d 425 (1967).

United's conduct in refusing to provide Bennett B. Cohon and Marilyn Cohon indemnification, where that duty is clear, as set out above, violates each of these principles. United has narrowly construed its coverage grant and expansively construed its exclusions. United has construed all ambiguities in its favor and has refused to indemnify its insured where there is a obvious coverage under its policy. United has repeatedly attempted to misrepresent the terms and conditions of the insurance coverage it has provided to its insureds. United has treated its insureds Bennett B. Cohon and Marilyn Cohon unfairly and has only considered those facts which it hopes would support a declination of coverage.

For these reasons, United has unreasonably denied this claim and provided the basis for its insureds Bennett B. Cohon and Marilyn Cohon to file suit against United for breach of the insurer's duty of good faith and fair dealing. As you should be aware, such an action exposes United to tort damages and, potentially, punitive damages. See *Neal vs. Farmers Ins. Exchange*, 21 Cal.3d 910 (1978). Moreover, United will be liable for its insured's attorneys' fees and costs in securing the benefits provided under the policy. *Brandt v. Superior Court* 37 Cal.3d 813 1985).

Based on the foregoing, Bennett B. Cohon and Marilyn Cohon reiterates their demand for immediate indemnification in this matter pursuant to the provisions of United's title insurance policy. If Bennett B. Cohon and Marilyn Cohon do not receive notification that United will

7 | P a g e
Tamar Schiller, Esq.
July 13, 2010
Bennett Cohon et al

provide indemnification for this matter within fifteen (15) days, they will proceed to enforce their legal rights as outlined above.

Please note that nothing in this correspondence should be construed as a waiver of any of the rights of Bennett B. Cohon and Marilyn Cohon under the foregoing policy.

Sincerely,

Henry Nicholls for
Cohon & Pollak, LLP

cc:    Bennett B. Cohon and Marilyn Cohon

EXHIBIT "E"

# CHICAGO TITLE INSURANCE COMPANY



6601 FRANCES STREET, OMAHA, NE 68106 · TEL: (402) 498-7000 · (888) 453-4095

September 21, 2010

Henry Nicholls, Esq.
Cohon & Pollak, LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067

Re:   Claim No.:   363416
      Policy No.:  05-0059-97-010503
      Insured:     Bennett B. Cohon and Marilyn Cohon
      Property:    11655 Ohio Ave.
                   Los Angeles, CA 90025

Dear Mr. Nicholls:

Chicago Title Insurance Company ("Chicago Title") is in receipt of your letter dated July 13, 2010. To clarify, Chicago Title was the underwriter on the above referenced policy, and United Title Company was acting as its agent at the time of issuance. Fidelity National Title Group is a holding company for the various underwriters, including Chicago Title, that are now within the Fidelity National Financial family of companies. I believe that copies of the owners and lenders policies were enclosed with our previous letter, but apologize if that was not done. Copies are enclosed with this letter.

Chicago Title has reviewed you request for reconsideration and at this time we are prepared to stand by our earlier decision.

On page 3 of your letter you recite the definition of an insured from the 1987 ALTA Residential Owner's Policy. However, you do not assert how this applies to the Cohons as they do not fall under any category of the definition. Later on that page you accuse Chicago Title of attempting to change the terms of the policy to improperly exclude the claim from coverage. There was, in fact, no attempt to do so. Chicago Title was merely pointing out that the wrong policy type was issued, but that this matter was not covered under either policy type.

On page 5 of your letter you state that "Covered risk 14 clearly applies to the current circumstance…" However, covered risk 14 applies only to defects, liens or encumbrances which affect the title of the property. Chicago Title does not believe that matters relating to Certificates of Occupancy affect title. And even if they were found to affect title, the matter would be excluded from coverage under Exclusion 1.

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees, and expenses resulting from:

Henry Nicholls, Esq.
September 21, 2010
Page 2

   1.  Governmental police power, and the existence or violation of any law or
      government regulation.  This includes building and zoning ordinances and also
      laws and regulations concerning:

       .  land use
       .  improvements on the land
       .  land division
       .  environmental protection

    This exclusion does not apply to violations or the enforcement of these matters which
    appear in the public records at Policy Date.

    This exclusion does not limit the zoning coverage described in Items 12 and 13 of
    Covered Title Risks.

The Cohons have good title to the property, even if they no longer have coverage under their
policy. If the condition of the property was misrepresented by the sellers, the Cohon's dispute
may be with them. For the foregoing reasons, Chicago Title respectfully asserts that this is not a
covered matter.

If you do not agree with our position or if you have information or documentation of which we
are not aware, and that you believe gives rise to a covered claim, please let me know. If you have
any further questions or concerns regarding this claim, please do not hesitate to contact me. If I
do not receive additional information or documentation, your claim file will be closed in 30 days
from the date of this letter.

Enclosed is a "Notice to Claimant When Your Claim Has Been Denied" for your reference. This
notice is provided pursuant to state regulations and contains certain information that may be of
assistance to claimants whose claims have been denied.

Sincerely,

Tamar Schiller, Esq.
Claims Counsel
Fidelity National Title Group
6601 Frances Street
Omaha, NE 68106
Main Tel: (888) 453-4095
Direct Tel: (402) 970-3949
Fax: (402) 498-7894
Tamar.Schiller@fnf.com

Enc.

NOTICE TO CLAIMANT

WHEN YOUR CLAIM HAS BEEN DENIED

You have various rights, and limitations upon those rights, as provided in the policy or guarantee, under state or federal law, or under governmental regulations. *It is important that you are aware of the following:*

ARBITRATION

Your policy or guarantee may give you, and the Company, the right to Arbitration. If the right to Arbitration is contained in the Conditions and Stipulations of the policy or guarantee, then you may request that a neutral Arbitrator hear any coverage decision made by the Company. If you should decide to seek Arbitration, then the Company upon request will provide a copy of the Rules for Arbitration to you.

COMPLAINTS TO THE INSURANCE COMMISSIONER

If you feel that your claim has not been properly handled, then you may file a complaint with the Department of Insurance at 300 South Spring Street, Suite 201, Los Angeles, California 90013. The telephone number is (213) 897-8921.

STATUTE OF LIMITATIONS

*California Code of Civil Procedure §339* provides that the aggrieved party must file an action on a guaranty of title or policy of title insurance within two (2) years from the discovery of the loss or damage. The statute of limitations may be longer in other states.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge R. Gary Klausner and the assigned discovery Magistrate Judge is Fernando M. Olguin.

The case number on all documents filed with the Court should read as follows:

## CV11- 8114 RGK (FMOx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

======================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X]  Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ]  Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ]  Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Name & Address:
Henry Nicholls, Esq. (CSBN 126129)
Cohon & Pollak, LLP
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Tel (310) 231-4470/Fax (310) 231-4610

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENNETT B. COHON, an individual, MARILYN COHON, an individual<br><br>                                    PLAINTIFF(S)<br><br>              v.<br><br>CHICAGO TITLE INSURANCE COMPANY a Nebraska corproation<br><br>                                    DEFENDANT(S). | CASE NUMBER<br><br>**CV11 08114 RGK FMOx**<br><br><br>**SUMMONS** |

TO:     DEFENDANT(S): CHICAGO TITLE INSURANCE COMPANY

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, Henry Nicholls _____, whose address is 1999 Avenue of the Stars, Suite 1100, Los Angeles, California 90067 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

SEP 2 9 2011

Dated: _____

By: ___**CHRISTOPHER POWERS**___
              Deputy Clerk

              *(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                    **SUMMONS**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
BENNETT B. COHON and MARILYN COHON

**DEFENDANTS**
CHICAGO TITLE INSURANCE COMPANY

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Henry Nicholls, Esq., Cohon & Pollak, LLP, 1999 Avenue of the Stars, Suite 1100, Los Angeles, CA 90067; Tel (310) 231-4470

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☑ **MONEY DEMANDED IN COMPLAINT: $** In excess of $75,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Insurance Contract, Declaratory Relief, Breach of the Covenant of Good Faith and Fair Dealing

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☑ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

# CV11 08114

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)      CIVIL COVER SHEET      Page 1 of 1

CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
  ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
  ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
  ☐ D. Involve the same patent, trademark or copyright, **and** one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Incorporated -- Nebraska; Principal Place of Business -- Florida |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
  Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* **Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date September 28, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)  CIVIL COVER SHEET  Page 2 of 2